# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Wilmington Savings Fund Society, FSB,

           Plaintiff,

v.

Maria C. Kattula, Robert Kattula, Maria C. Kattula Living Trust Dated 10-23-95, TAJ Graphics Enterprises, LLC, United States of America, and Green Lake Equities, LLC,

           Defendants.

Case No. 16-cv-12813

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

_____/

## OPINION AND ORDER ON REMAND

This case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. In accordance with the Sixth Circuit's November 6, 2019 order, the Court addresses whether it has jurisdiction over Plaintiff Wilmington Savings Fund Society, FSB's declaratory-judgment count (Count 1). *Wilmington Sav. Fund Soc'y, FSB as Tr. of Residential Credit Opportunities Tr. V v. Kattula*, No. 19-1138, 2019 WL 7882540, at *2 (6th Cir. Nov. 6, 2019). As instructed to do so by

the Sixth Circuit, the Court assesses its jurisdiction by considering (1) whether Defendant the United States of America has waived sovereign immunity for the declaratory-judgment count, *id.* at *2 n.1, and (2) whether—based on the five-factor test established in *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)—it is appropriate for the Court to exercise the discretionary jurisdiction conferred by the Declaratory Judgment Act, 28 U.S.C. § 2201. *Kattula*, 2019 WL 7882540, at *1–2.

For the reasons set forth below, the Court concludes that the United States has waived sovereign immunity and that the *Grand Trunk* factors favor the exercise of jurisdiction. Therefore, the Court also addresses the merits of the declaratory-judgment count. *Id.* at *2 (instructing the Court "to address the merits" of the declaratory-judgment count on remand "if [the Court] decides to exercise its jurisdiction" under the *Grand Trunk* framework). The Court finds that Plaintiff fails to provide a legal basis for issuing the requested declaration on the merits of that count.

I.    **Background**

The Sixth Circuit summarized the facts of this case as follows:

In June 2016, WestVue NPL Trust (WestVue) filed a complaint in Michigan state court alleging that the Kattulas[1] had defaulted on their mortgage, that it owned the note and mortgage, and that it was entitled to foreclosure (foreclosure count). WestVue also requested a judgment declaring the existence of the Kattulas' debt and invalidating a previously recorded discharge of mortgage (declaratory-judgment count). According to Wilmington,[2] that discharge—which stated that the note had been fully paid and had been executed by Fifth Third Mortgage Company in July 2014—was executed and recorded in error.

The United States—named as a defendant because it held a tax lien—removed the case to federal court based on 28 U.S.C. §§ 1442(a)(1) and 1444. During the district court proceedings, WestVue assigned the mortgage to Wilmington, and Wilmington replaced WestVue as the proper plaintiff. After a May 2018 bench trial, the district court found that the evidence showed that the Kattulas took out the mortgage at issue, that the mortgage had been assigned to Wilmington, and that Wilmington had presented "credible evidence" that the discharge was entered in error. Yet the district court determined that Wilmington was not entitled to foreclosure because it had failed to prove the amount of the debt or that the debt was in default. Wilmington moved to alter or amend, arguing that the district court should have awarded the

---

[1] The Sixth Circuit's order indicates that "Kattulas" refers to Defendants "Maria C. Kattula, Robert Kattula, and the living trust of Maria C. Kattula." *Wilmington Sav. Fund Soc'y, FSB as Tr. of Residential Credit Opportunities Tr. V v. Kattula*, No. 19-1138, 2019 WL 7882540, at *1 (6th Cir. Nov. 6, 2019).

[2] In the Sixth Circuit's order, "Wilmington" refers to Plaintiff. *See Wilmington Sav. Fund Soc'y, FSB as Tr. of Residential Credit Opportunities Tr. V v. Kattula*, No. 19-1138, 2019 WL 7882540, at *1 (6th Cir. Nov. 6, 2019).

> declaratory relief requested based on its finding that the discharge was erroneous. But the district court denied that motion. . . .
>
> On appeal, Wilmington argue[d] only that the district court should have granted the declaratory-judgment count and, relatedly, that the court erred in denying Wilmington's Rule 59(e) motion.

*Id.* at *1.

The Sixth Circuit found that remand was necessary because the Sixth Circuit was unable to determine whether the Court abused its discretion (the applicable standard of review), given the Court's failure to apply the *Grand Trunk* factors. *Id.* at *2. Those factors guide district courts in evaluating whether to exercise the discretionary jurisdiction conferred by the Declaratory Judgment Act. *Id.* at *1. In remanding the case, the Sixth Circuit noted that the Court "declined the declaratory relief that Wilmington requested in its first count solely on the ground that Wilmington failed to prove the elements necessary for the foreclosure relief that Wilmington requested in its second count." *Id.* at *2. In the Sixth Circuit's view, however,

> a declaration that the debt continues to exist (as the court found as a factual matter) may clarify the legal relations between the parties even if Wilmington failed to present adequate proof about the amount of the debt or the existence

4

of a default—the additional elements required for its second foreclosure count.

*Id.* The Sixth Circuit remanded for a determination as to whether such a declaration would be appropriate under the *Grand Trunk* factors. *Id.* The Sixth Circuit directed the Court to address the merits of the declaratory-judgment count if the *Grand Trunk* factors favor the exercise of jurisdiction. *Id.*

In a footnote within its order, the Sixth Circuit instructed the Court to also address on remand whether the United States has waived sovereign immunity for the declaratory-judgment count. *Id.* at *2 n.1. The court of appeals stated that the United States argued on appeal that "it has only waived sovereign immunity for the foreclosure claim and has not done so for the declaratory judgment." *Id.* The Sixth Circuit indicated that the Court "will need to address on remand whether it has jurisdiction in light of th[e United States'] position." *Id.*

The Court ordered supplemental briefing on the sovereign immunity issue. (ECF No. 55.) Supplemental briefs addressing this issue were submitted by (1) Plaintiff (ECF No. 59), (2) the United States (ECF No. 57), and (3) Defendants Maria C. Kattula, Robert Kattula, and Green

5

Lake Equities, LLC (referred to in their brief as "the Kattula Parties"[3]). (ECF No. 58.) Two of the supplemental briefs—the brief submitted by Plaintiff and the one submitted by the United States—discuss the *Grand Trunk* factors. (ECF Nos. 57, 59.)

## II.   Discussion

### A. Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Munaco v. United States*, 522 F.3d 651, 652–53 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983); citing *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–12 (1821)). "When the federal government has waived its immunity and consented to suit, [the Sixth Circuit] strictly construe[s] any waiver, and the putative plaintiff must abide the terms of the consent." *Id.* at 653 (citing *Young v. United States*, 332 F.3d 893, 895 (6th Cir. 2003)); *see Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."). "A

---

[3] To be consistent with how these parties refer to themselves in their supplemental brief, the Court refers to Maria C. Kattula, Robert Kattula, and Green Lake Equities, LLC as "the Kattula Parties."

waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

The United States asserts in its supplemental brief that it has waived sovereign immunity and that sovereign immunity therefore does not preclude the requested declaratory judgment. (ECF No. 57, PageID.1203.) The United States' entire discussion of sovereign immunity is as follows:

> Plaintiff's request for declaratory judgment is essentially a quiet title action because it seeks to clear a clouded title by removing the discharge of its lien from the chain of title. *Hunter v. United States*, 769 F. App'x 329, 332 (6th Cir.), *cert. denied*, 140 S. Ct. 492 (2019). Because the United States also contends that federal tax liens encumber th[e] property [at issue], the government has waived sovereign immunity to suit under 2[8] U.S.C. § 2410(a)(1).[4]

(*Id.*) Plaintiff agrees that the United States has waived sovereign immunity. (ECF No. 59, PageID.1232–1234.) But the Kattula Parties argue that the United States has not waived sovereign immunity. (ECF No. 58, PageID.1213–1217.)

---

[4] The Court believes that the United States' reference to "26 U.S.C. § 2410(a)(1)" in its supplemental brief is a typographical error. (ECF No. 57, PageID.1203.)

7

The statute that the United States references in its supplemental brief—28 U.S.C. § 2410(a)(1)—"provides a limited waiver of the United States' sovereign immunity." *Pollack v. United States*, 819 F.2d 144, 145 (6th Cir. 1987). Section 2410(a)(1) states in relevant part that

> the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
>
> (1) to quiet title to . . .
>
> real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a)(1). In other words, "Congress waived sovereign immunity from any action 'to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien.'" *Hunter*, 769 F. App'x at 331 (quoting 28 U.S.C. § 2410(a)(1)). It is undisputed in this case that the United States claims that federal liens encumber the property. (ECF No. 57, PageID.1203; ECF No. 58, PageID.1215.) *See Gateway Five, LLC v. In re Price*, No. 2:07-cv-249, 2007 WL 4260810, at *2 (E.D. Tenn. Nov. 30, 2007) ("[S]overeign immunity is abrogated [under § 2410] where the United States merely claims there is a lien on the property in question. Because the United States asserts a lien, § 2410 is applicable[.]").

8

The Sixth Circuit noted in *Hunter v. United States* that

[c]ourts do not uniformly agree about the meaning of "quiet title" in § 2410. Some courts have read the words "quiet title" narrowly. These courts have said that Congress waived immunity only over disputes about *title* to property and not other, analogous disputes about *interests* in property. *E.g.*, *Raulerson v. United States*, 786 F.2d 1090, 1091–92 (11th Cir. 1986); *cf. Hopkins v. Walker*, 244 U.S. 486, 490–91, 37 S. Ct. 711, 61 L.Ed. 1270 (1917) (distinguishing between traditional quiet title actions and analogous disputes about property interests); *accord Holland v. Challen*, 110 U.S. 15, 18, 3 S. Ct. 495, 28 L.Ed. 52 (1884). This interpretation follows the old common law approach, where quiet title actions aimed to end protracted lawsuits about who owned property. *See Holland*, 110 U.S. at 20, 3 S. Ct. 495. But other courts have interpreted Congress's waiver more broadly, saying that quiet title actions can also seek to remove a *cloud* over already established title. *E.g.*, *United States v. Coson*, 286 F.2d 453, 457–58 (9th Cir. 1961); *see also Nationstar Mortg., LLC v. Humphrey*, No. 11-2185-STA, 2011 WL 3273077, at *4 & n.9 (W.D. Tenn. July 29, 2011) (collecting cases). This interpretation reflects the fact that, when Congress added the words "quiet title" to § 2410, most states had enacted statutes broadening quiet title actions to also include cloud-removal disputes. *See Wehrman v. Conklin*, 155 U.S. 314, 322, 15 S. Ct. 129, 39 L.Ed. 167 (1894); *see also Falik v. United States*, 343 F.2d 38, 41–42 (2d Cir. 1965); Pub. L. No. 780, 56 Stat. 1026, 1026 (1942) (adding "quiet title" to § 2410).

*Id.* (emphasis in original).

9

In *Hunter*, the Sixth Circuit determined that it "need not decide the precise extent to which Congress waived immunity because [the plaintiff] loses under either interpretation." *Id.* Applying both interpretations of "quiet title" presented by the Sixth Circuit in *Hunter*, the Court finds that this case is a quiet title action under the broader interpretation of "quiet title" in § 2410.

Under the narrow interpretation of "quiet title," this case is not a quiet title action. Plaintiff does not dispute who holds title to the property. The relief Plaintiff seeks in its declaratory-judgment count includes a declaration that the discharge is invalid, that the mortgage is reinstated, and that the mortgage takes first priority over other interests in the property. Assessing whether it is appropriate to grant this relief does not involve identifying the correct title-holder or resolving a challenge to who has title to the property.

Under the broader interpretation of "quiet title" in § 2410, however, this case is a lawsuit to quiet title to the extent that Plaintiff "seek[s] to remove a cloud over already established title." *Id.* (internal citations omitted). The Sixth Circuit in *Hunter* stated that courts "have permitted such quiet title actions [by a lienholder that does not hold title to the

underlying property] to resolve lien priority . . . when the plaintiff *himself* was a 'private lienor.'" *Id.* at 332 (emphasis in original) (citing *United States v. Brosnan*, 363 U.S. 237, 244–46 (1960); *United States v. Morrison*, 247 F.2d 285, 290 (5th Cir. 1957)); *see Nationstar Mortg., LLC*, 2011 WL 3273077, at *4 ("Several Circuits have concluded that suits to adjudicate lien priority are analogous to suits to quiet title, and therefore, § 2410(a)(1) should be broadly construed to waive sovereign immunity in such cases."); *Nationstar Mortg., LLC*, 2011 WL 3273077, at *4 n.9 (collecting cases). Here, Plaintiff is a private lienor. In its declaratory-judgment count, Plaintiff asks that the Court declare that the discharge is invalid, that the mortgage on the property held by Plaintiff is reinstated, and that the mortgage takes "first priority" over other parties' interests in the property. (ECF No. 1, PageID.174–177.) Said differently, Plaintiff is a private lienor that wants the Court to resolve lien priority in Count 1. Therefore, this case is a quiet title action under § 2410. The United States has waived sovereign immunity as to Plaintiff's declaratory-judgment count.

In their supplemental brief, the Kattula Parties argue that the following two cases "show that the United States has not waived

sovereign immunity": (1) *Mich. Prop. Ventures, LLC v. United States*, No. 14-10215, 2014 WL 2895485 (E.D. Mich. June 26, 2014), and (2) *Hunter v. United States*, 769 F. App'x 329 (6th Cir. 2019). (ECF No. 58, PageID.1214.) The Kattula Parties' arguments are unavailing because the facts of those cases are distinguishable from the facts of this case.

In *Mich. Prop. Ventures, LLC*, the court found that the United States did not waive sovereign immunity under § 2410 because the affidavits recorded by the United States with the Wayne County Register of Deeds did "not contain any language suggesting that the Properties are encumbered by a security interest" such as a mortgage or lien. *Mich. Prop. Ventures, LLC*, 2014 WL 2895485, at *1, *7. Here, "the United States does claim a lien"—as the Kattula Parties themselves acknowledge. (ECF No. 58, PageID.1215.) The Kattula Parties assert that "§ 2410 is nevertheless inapplicable because it does not apply to a declaratory-judgment action." (*Id.*) They support this assertion by citing to two out-of-circuit cases: (1) *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1358 (9th Cir. 1993), and (2) *Raulerson v. United States*, 786 F.2d 1090, 1091 (11th Cir. 1986). (ECF No. 58, PageID.1215.) But the cited portions of those cases do not indicate that § 2410 is inapplicable to a

12

declaratory-judgment action.[5] In addition, the Kattula Parties do not explain why the Court should consider those out-of-circuit cases instead of decisions from within the Sixth Circuit such as *Hunter*, 769 F. App'x 329, and *Nationstar Mortg., LLC*, 2011 WL 3273077, which support the broader interpretation of "quiet title" discussed above, and therefore, a finding of a waiver of sovereign immunity.

The Kattula Parties also argue that the United States has not waived sovereign immunity based on *Hunter*. (ECF No. 58, PageID.1214.) As noted above, the Sixth Circuit determined in *Hunter* that the plaintiff "loses under either interpretation" of "quiet title" in § 2410. *Hunter*, 769

---

[5] In the portion of *E.J. Friedman Co.* that the Kattula Parties cite, the Ninth Circuit determined that the plaintiff's "action was not cognizable under [§ 2410]." *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1358 (9th Cir. 1993). The court stated that "§ 2410 permits quiet title actions challenging the procedural aspects of tax liens, but not the merits of the underlying tax assessments." *Id.* (internal citation and quotation marks omitted). The court determined that the plaintiff's claim was "not easily classified as either," given that the plaintiff sought "a declaration that the property is not encumbered by [a] tax lien because the lien is worthless." *Id.* The court "conclude[d] that such a claim simply does not fall within the scope of § 2410." *Id.* And in the cited portion of *Raulerson*, the Eleventh Circuit found that the plaintiff's "complaint is not an action to quiet title." *Raulerson v. United States*, 786 F.2d 1090, 1091 (11th Cir. 1986). The court stated that "[w]hile the instant [declaratory judgment] action may be similar to a quiet title action, section 2410 waives sovereign immunity only in *actual* quiet title actions, not suits analogous to quiet title actions." *Id.* (emphasis in original). Thus, the Kattula Parties' citations to *E.J. Friedman Co.* and *Raulerson* do not support their assertion that "§ 2410 is . . . inapplicable because it does not apply to a declaratory-judgment action." (ECF No. 58, PageID.1215.)

F. App'x at 331. The Kattula Parties assert that Plaintiff "similarly . . . does not seek either to quiet title or to remove a cloud on its title." (ECF No. 58, PageID.1216.) The Court disagrees. Plaintiff is a private lienor that "seek[s] to remove a cloud over already established title," *Hunter*, 769 F. App'x at 331, because it wants the Court to resolve lien priority—including the priority of its own interest in the property—as set forth above. In contrast, the plaintiff in *Hunter* did "not br[ing] a quiet title action under . . . the broader cloud-interpretation." *Id.* at 333. The plaintiff was "not a private lienor" suing to determine the priority of his own lien; he was "a non-titleholding, non-lien-holding third party" who sought "to adjudicate the priority of *another party's* lien so that he c[ould] gain a derivative benefit: lower tax liability." *Id.* at 332 (emphasis in original). The plaintiff in *Hunter* is therefore distinguishable from Plaintiff. The Kattula Parties' argument that the United States has not waived sovereign immunity in light of *Mich. Prop. Ventures, LLC* and *Hunter* lacks merit.

In sum, this case is a quiet title action under § 2410. Accordingly, the United States has waived sovereign immunity for the declaratory-judgment count (Count 1).

14

## B. The Declaratory Judgment Act

The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "The statute confers 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 796 (6th Cir. 2022) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "Exercise of jurisdiction under the Declaratory Judgment Act is not mandatory." *W. Bend Mut. Ins. Co. v. Athletika Sports & Fitness, LLC*, No. 22-10600, 2023 WL 2368018, at *2 (E.D. Mich. Mar. 6, 2023) (citing *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)).

In *Grand Trunk*, the Sixth Circuit stated that it

appl[ies] the following general principles in determining whether a declaratory ruling is appropriate:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are

15

> (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

746 F.2d at 326 (internal citations omitted). The Sixth Circuit identified five factors (referred to as "the *Grand Trunk* factors") that guide a court's determination of whether to exercise or decline jurisdiction under the Declaratory Judgment Act. These factors (including three additional sub-factors) are:

> (1) Whether the declaratory action would settle the controversy;

> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"[6]

---

[6] The Sixth Circuit indicates that

> [t]he term ["procedural fencing"] has come to encompass a range of tactics that courts regard as unfair or unseemly. *See Sherwin-Williams*, 343 F.3d at 391. Many cases list "provid [ing] [sic] another forum in a race for res judicata" as an example of procedural fencing—the example helps the reader understand what the term means. *See, e.g.*, *Lexington*

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]

> a. whether the underlying factual issues are important to an informed resolution of the case;

> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5) whether there is an alternative remedy which is better or more effective.

*W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (alteration in original) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (primary factors); *Scottsdale Ins. Co.*, 513 F.3d at 560 (sub-factors)).

---

*Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 968 (8th Cir. 2013).

*W. World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014).

"[T]he *Grand Trunk* factors and their cousins in other circuits direct the district court to consider three things: efficiency, fairness, and federalism." *Id.* (citing *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390–91 (5th Cir. 2003)). "The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.* The Sixth Circuit has "has 'never assigned weights to the *Grand Trunk* factors when considered in the abstract' and the factors are not always . . . equal[ ]."[7] *Cardinal Health, Inc.*, 29 F.4th at 797 (quoting *W. World Ins. Co.*, 773 F.3d at 759). "The essential question [on review] is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *W. World Ins. Co.*, 773 F.3d at 759 (citing *Sherwin-Williams Co.*, 343 F.3d at 390); *Boyd v. Martinez*, No. 22-6026, 2023 WL 4903173, at *3 (6th Cir. Aug. 1, 2023) (citing *Cardinal Health, Inc.*, 29 F.4th at 797). "A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state

---

[7] "For example, a relatively efficient declaratory judgment (factors 1, 2, and 5) could very well be inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of principles we generally label 'federalism' (factor 4)." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

law; if there were evidence of procedural fencing; or if the sought-after declaration would somehow be frivolous or purely advisory." *W. World Ins. Co.*, 773 F.3d at 760. For the reasons set forth below, the Court concludes that the *Grand Trunk* factors weigh in favor of exercising jurisdiction.

> i.   *Factor 1: Whether the Declaratory Action Would Settle the Controversy*

"The first factor to consider is whether the district court's judgment would settle the controversy." *Scottsdale Ins. Co.*, 513 F.3d at 554.

Plaintiff argues in its supplemental brief that "exercising jurisdiction over Count One would resolve this case entirely." (ECF No. 59, PageID.1228.) Plaintiff states that

> [a]n order reflecting the Court's finding that the Discharge was erroneous would put an end to this lawsuit and would allow Plaintiff to pursue other, non-judicial relief, as the Court has recognized. ECF No. 50 at PageID.1190, n.1. In that scenario, there would be nothing left for this Court, or any court, to decide with respect to the current controversy.

(*Id.*) In a later portion of its brief, Plaintiff states that "there is no pending or anticipated state court action relating to this dispute." (*Id.* at PageID.1230.) The United States' position is that "declaratory relief would not settle the controversy"; rather, "it would only extend the

controversy." (ECF No. 57, PageID.1205.) The United States asserts that "[a]t best, the purpose of this declaration is to use it as *res judicate* [sic] in a subsequent case to obtain some recovery in a government suit to enforce the federal tax liens or to again attempt to foreclose the mortgage." (*Id.*) According to the United States, the Court "was not mistaken in its prediction" that "the only purpose of the declaratory relief is for Plaintiff to again attempt to foreclose this mortgage." (*Id.* at PageID.1205 & n.1.) The United States indicates that "until confronted by Defendant's counsel, Plaintiff attempted to foreclose the mortgage and sell the property shortly after the Court denied its motion to for [sic] reconsideration and while its appeal was pending." (*Id.* at PageID.1205 n.1.) In their supplemental briefs, Plaintiff and the United States do not cite to cases that define "the controversy" as that term appears in the first *Grand Trunk* factor.

In the Sixth Circuit, some cases instruct courts evaluating the first *Grand Trunk* factor to consider "whether resolution of the declaratory judgment action will resolve all the disputes between the parties in the underlying state court action" (such as a tort action brought by an injured party against the insured). *Boyd*, 2023 WL 4903173, at *5 (citing

*Scottsdale Ins. Co.*, 513 F.3d at 556); *W. World Ins. Co.*, 773 F.3d at 760. Other cases direct courts to consider whether the declaratory action will resolve the dispute between the parties in that declaratory action (such as a declaratory action between an insurer and the insured that is related to the tort action). *W. World Ins. Co.*, 773 F.3d at 760; *Scottsdale Ins. Co.*, 513 F.3d at 555. The Sixth Circuit has "suggested that the split might reflect both 'competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible,' as well as differences in the factual circumstances presented by different cases." *W. World Ins. Co.*, 773 F.3d at 760 (quoting *Scottsdale Ins. Co.*, 513 F.3d at 555–56); *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 436 (6th Cir. 2018). Here, there is no underlying state-court action for the Court to consider in its evaluation of the first factor. In its filing, Plaintiff confirms that there is no related state-court action pending, and it indicates that no such action is anticipated. (ECF No. 59, PageID.1230.) The Court thus evaluates whether a declaratory judgment will resolve the dispute between the parties in this case.

Count 1 of the amended complaint seeks a declaration that (1) the discharge "be extinguished and removed from the chain of title of the Property," (2) the mortgage is valid and reinstated, (3) Plaintiff is the holder of the mortgage, (4) the mortgage "is the first mortgage of record, and a valid, first priority lien on the Property," (5) the interests in the property of Defendants the living trust of Maria C. Kattula, TAJ Graphics Enterprises, LLC, Atlantic City Showboat, Inc.,[8] and the United States are junior to the mortgage, and (6) "upon the recording of the Sheriff's Deed of Sale, Defendants the Trust, TAJ Graphics, Atlantic City, and the USA no longer have an interest in title to the Property" and "retain redemption rights until the statutory redemption period expires. [MCL §600.3140]."[9] (ECF No. 1, PageID.174–177.) If the Court were to

---

[8] On April 10, 2017, the Court signed a stipulated order dismissing without prejudice Defendant Atlantic City Showboat, Inc. from the case. (ECF No. 20.)

[9] The declaratory relief sought in Count 1 of the amended complaint seems broader than the relief Plaintiff asks for in its supplemental brief: "an order and judgment declaring that the July 2014 Discharge of Mortgage was erroneously recorded and should be extinguished and removed from the chain of title." (ECF No. 59, PageID.1234.) In deciding the first two *Grand Trunk* factors, the Sixth Circuit appears to consider the declarations sought in the federal action. *See Byler v. Air Methods Corp.*, 823 F. App'x 356, 366 (6th Cir. 2020) (discussing the declaration requested by the plaintiffs and finding that "[w]ere the district court to issue a declaration to this effect, . . . the declaratory judgment would settle the controversy and clarify the legal relations"); *Boyd v. Martinez*, No. 22-6026, 2023 WL 4903173, at

issue a declaration to this effect, it would settle the controversy before the Court—and between the parties—regarding the existence of the discharge, the validity of the mortgage, and lien priority. From what the Court can tell, "the parties to the instant federal litigation are likely to be the same as those in any future state-court . . . action[ ], thereby giving preclusive effect to the federal-court declaratory judgment." *Byler v. Air Methods Corp.*, 823 F. App'x 356, 366 (6th Cir. 2020). Therefore, the first *Grand Trunk* factor favors the exercise of jurisdiction. *See Scottsdale Ins. Co.*, 513 F.3d at 556 (finding that "the first factor points toward the exercise of jurisdiction" because "the district court's declaratory judgment did settle the controversy between the parties").

> ii.   *Factor 2: Whether the Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relations in Issue*

"The second factor to consider is whether the district court's judgment would clarify the legal relations at issue." *Id.* This factor "is closely related to the first factor and is often considered in connection with it." *Id.* at 557 (citing *Travelers Indem. Co. v. Bowling Green Pro.*

---

*5 (6th Cir. Aug. 1, 2023) (considering the "two declarations" sought in the federal action). Therefore, the Court's analysis of the first and second factors considers the declaratory relief that Plaintiff requests in Count 1 of the amended complaint.

*Assocs., PLC*, 495 F.3d 266, 271–72 (6th Cir. 2007)); *Boyd*, 2023 WL 4903173, at *5 ("The first two *Grand Trunk* factors are closely related, and courts often examine them in conjunction with one another." (citing *W. World Ins. Co.*, 773 F.3d at 760)). According to the Sixth Circuit, "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co.*, 513 F.3d at 557 (citing *Bituminous*, 373 F.3d at 814; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)); *Mass. Bay Ins. Co.*, 759 F. App'x at 438 ("In general, courts tend to consider th[e second] factor with the first factor, reaching the same conclusion for both." (internal citations omitted)).

The second factor's "requirement that the judgment clarify the legal relationships of the parties is based upon [the Sixth Circuit's] desire for the declaratory judgment to provide a final resolution of the discrete dispute presented." *Scottsdale Ins. Co.*, 513 F.3d at 557. "Thus, [the Sixth Circuit] focus[es] only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court."[10] *Id.*; *see*

---

[10] The Court recognizes that the Sixth Circuit reached this conclusion regarding the scope of the second factor in a federal declaratory action brought by a liability insurer seeking a declaration that it had no duty to extend coverage to a

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019) (concluding that a federal declaratory judgment settles the legal relationship of the parties in a federal action between an insurer and an insured even though the judgment "does not resolve the relative rights of all parties in the state-court litigation"); *W. World Ins. Co. v. Hoey*, No. 12-10220, 2013 WL 5372769, at *4 (E.D. Mich. Sept. 25, 2013) ("The *Scottsdale* Court indicated that the legal relationships at issue are those between the parties to the declaratory judgment, or, in other words, the extent of the indemnity obligation of the insurer." (citing *Scottsdale Ins. Co.*, 513 F.3d at 557)), *aff'd*, 773 F.3d 755 (6th Cir. 2014); *Gen. Star Nat'l Ins. Co. v. Terry Flinchum CPA, Inc.*, No. 6:22-CV-189-CHB, 2023 WL 3956150, at *14 (E.D. Ky. June 12, 2023) ("In more recent decisions

---

therapist for certain tort claims asserted against him in state court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 550 (6th Cir. 2008). The Sixth Circuit stated that "[w]hile the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.* at 557. The Court has not found a case indicating that the Sixth Circuit's interpretation of the second factor is inapplicable to a federal declaratory action such as this one, which does not involve a liability insurer or an underlying state-court case. Plaintiff and the United States do not identify cases instructing that the scope of the second factor depends on the type of federal declaratory action brought, the types of parties to that action, and the existence of a parallel state-court action.

[following *Scottsdale Ins. Co. v. Flowers*], the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation." (citing *United Specialty Ins. Co.*, 936 F.3d at 398–99; *Mass. Bay Ins. Co.*, 759 F. App'x at 438)), *appeal dismissed*, No. 23-5628, 2023 WL 9162718 (6th Cir. Oct. 23, 2023).

In their supplemental briefs, Plaintiff and the United States address the first and second *Grand Trunk* factors together. As a result, their arguments regarding the second factor are the same as their arguments presented above related to the first factor. (ECF No. 57, PageID.1205; ECF No. 59, PageID.1228.)

As the Court determined with respect to the first *Grand Trunk* factor, the second factor supports the Court's exercise of jurisdiction. Issuing the requested declaration would be useful in clarifying the legal relations between the parties in this action because such a declaration would establish the validity of the mortgage held by Plaintiff and the

mortgage's priority over other parties' interests in the property.[11] Thus, the second factor supports exercising jurisdiction.

> iii.   *Factor 3: Whether the Declaratory Remedy is Being Used Merely for the Purpose of "Procedural Fencing"*

"The third factor to consider is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata.*" *Scottsdale Ins. Co.*, 513 F.3d at 558. "This factor is intended to preclude jurisdiction for declaratory plaintiffs who file lawsuits in an effort to achieve their choice of forum by filing first." *W. World Ins. Co.*, 2013 WL 5372769, at *4 (citing *Scottsdale Ins. Co.*, 513 F.3d at 558). The Sixth Circuit "has found evidence of 'procedural fencing' where the declaratory-judgment plaintiff filed its suit in apparent anticipation of litigation in state court." *United Specialty Ins. Co.*, 936 F.3d at 399 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788–90 (6th Cir. 2004)). "The concern articulated in the third factor is with the *plaintiff's*

---

[11] Even if the second factor were to require the Court to consider the impact of a declaration on the parties' legal relationships in an underlying state-court action, the Court would reach the same conclusion because there is no related state-court action here, as noted above. (*See* ECF No. 59, PageID.1230 ("There is no parallel state court proceeding.").)

use of the judgment for procedural fencing." *Scottsdale Ins. Co.*, 513 F.3d at 559 (emphasis in original).

"Courts are reluctant . . . to impute an improper motive to a plaintiff if there is no evidence of one in the record." *W. World Ins. Co.*, 2013 WL 5372769, at *4 (citing *Scottsdale Ins. Co.*, 513 F.3d at 558); *see Scottsdale Ins. Co.*, 513 F.3d at 558 ("We are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." (internal citations omitted)). "If there is no evidence of procedural fencing, [the Sixth Circuit] often find[s] that the factor is 'neutral,' *Travelers*, 495 F.3d at 272, and 'does not point toward *denying* jurisdiction,' *Flowers*, 513 F.3d at 559 (emphasis added)." *United Specialty Ins. Co.*, 936 F.3d at 399; *Boyd*, 2023 WL 4903173, at *6 (concluding that the third *Grand Trunk* factor "is neutral" given that "there is no evidence of procedural fencing or other improper motives in bringing th[e] declaratory judgment action" (citing *Cardinal Health, Inc.*, 29 F.4th at 798; *Banks Eng'g, Inc. v. Nationwide Mut. Ins. Co.*, No. 21-5652, 2022 WL 203332, at *4 (6th Cir. Jan. 24, 2022))); *Travelers Indem. Co.*, 495 F.3d at 272 ("Although no improper motive prompted this [declaratory judgment] action, this factor is neutral.").

Plaintiff argues that the third factor "supports the exercise of jurisdiction or at most is neutral" because "this case did not come to the Court by way of any form of 'race to file first' or other form of procedural jockeying." (ECF No. 59, PageID.1229.) Plaintiff notes that its "predecessor-in-interest filed the entirety of its case in Oakland County Circuit Court" and that "it was one of the defendants—the United States—which brought this case into federal court via removal" under § 1444. (*Id.*) The United States argues that the third factor weighs against exercising jurisdiction because "Plaintiff is engaged in procedural fencing, in an attempt to obtain partial relief in this case that it can use in a subsequent mortgage-foreclosure action." (ECF No. 57, PageID.1205.)

The Court finds that there is no evidence of procedural fencing or unfair conduct by Plaintiff for *res judicata* purposes. The complaint was initially filed in state court, and the case was removed to federal court by a Defendant, the United States. There is no pending related state-court litigation (apart from when this case was in state court prior to removal) (ECF No. 59, PageID.1230), so there is no indication that this case was brought by Plaintiff "in an attempt to get [its] choice of forum by filing

29

first." *Scottsdale Ins. Co.*, 513 F.3d at 558 (quoting *AmSouth Bank*, 386 F.3d at 789); *see id.* ("The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" (quoting *AmSouth Bank*, 386 F.3d at 788)). Moreover, Plaintiff indicates that there is no "anticipated state court action relating to this dispute." (ECF No. 59, PageID.1230.) As a result, there is no evidence that Plaintiff "filed its suit in apparent anticipation of litigation in state court." *United Specialty Ins. Co.*, 936 F.3d at 399 (citing *AmSouth Bank*, 386 F.3d at 788–90). The Court will not "impute an improper motive to . . . [P]laintiff where there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558. The third factor is therefore neutral. *See id.* at 559 ("[N]othing in the record suggests that [the plaintiff] acted improperly in seeking a declaratory judgment. Absent some indication of an improper motive in the record, th[e] third factor does not point toward denying jurisdiction."); *United Specialty Ins. Co.*, 936 F.3d at 399 ("agree[ing] with the district court that the third factor is neutral" due to a lack of evidence of procedural fencing by the plaintiff and finding no abuse of discretion

"[b]ecause the district court followed Sixth Circuit law in 'giv[ing] the plaintiff "the benefit of the doubt that no improper motive fueled the filing of [the] action""" (quoting *Scottsdale Ins. Co.*, 513 F.3d at 558)); *but see Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012) ("The third [*Grand Trunk* factor], relating to a race for res judicata, does not appear to apply in this case as we are not aware of any ongoing litigation in any other court relating to this matter.").

> iv.    *Factor 4: Whether the Use of a Declaratory Action Would Increase the Friction Between our Federal and State Courts and Improperly Encroach Upon State Jurisdiction*

"The fourth factor to consider is whether accepting jurisdiction would increase friction between federal and state courts." *Scottsdale Ins. Co.*, 513 F.3d at 559. "The fourth factor and its subfactors reflect concerns about principles of federalism." *W. World Ins. Co.*, 773 F.3d at 761. "The Supreme Court has cautioned that 'where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," if it permitted the federal declaratory action to proceed.'" *Scottsdale Ins. Co.*, 513 F.3d at 559 (alteration in original) (quoting *Wilton*, 515 U.S. 283). Thus, "the fourth factor weighs

against federal court declaratory relief when there are parallel state-court proceedings involving similar or identical issues of state law." *Byler*, 823 F. App'x at 367.

Plaintiff asserts that "the fourth *Grand Trunk* factor either slightly favors the exercise of jurisdiction, or at most is a neutral factor" because "there is no pending [or anticipated] state court matter and the factual and legal issues before the Court are relatively straightforward." (ECF No. 59, PageID.1230–1231.) Plaintiff states that "[t]he primary concerns underlying this factor—which relate to the interplay between state and federal court proceedings—do not apply." (*Id.* at PageID.1230.) Plaintiff notes that the entire case was removed to federal court and that "the foreclosure action (Count Two) has been decided in this case and is no longer pending." (*Id.*) The United States does not address the fourth *Grand Trunk* factor in its supplemental brief.

This case "does not raise serious concerns about federal encroachment on the state courts[ ] such that the . . . [C]ourt should decline jurisdiction." *W. World Ins. Co.*, 773 F.3d at 761. As Plaintiff points out, the case "does not raise novel or difficult questions of state law." *Id.* In addition, there is not a separate case before a state court

"involving similar or identical issues of state law." *Byler*, 823 F. App'x at 367. As a result, there is no reason to conclude that the federal declaratory action would increase friction between the state and federal courts and would improperly encroach on state jurisdiction. *See id.* at 366. The fourth factor either supports the exercise of jurisdiction or is not relevant. *See id.* at 366–67 (finding that the fourth factor supports the exercise of jurisdiction because any "issues of state law in the declaratory action [that] later appear in coercive state-court suits . . . will be simple and straightforward" and because "there is no allegation or evidence in the record that there are pending coercive actions by [the defendant] against the plaintiffs in state court"); *W. World Ins. Co.*, 773 F.3d at 761 (finding that under the fourth factor, the case did not raise concerns about federalism "such that the district court should decline jurisdiction" in part because the case did "not raise novel or difficult questions of state law"); *Greater N.Y. Mut. Ins. Co. v. Camelot Apartments LLC*, No. 1:21-cv-1032, 2024 WL 1347117, at *10 (N.D. Ohio Mar. 30, 2024) (stating that the fourth factor "favor[s] the exercise of jurisdiction because there is no other proceeding or any state court litigation addressing the same issues as under review here"); *but see Quicken Loans Inc. v. United States*, 152

F. Supp. 3d 938, 952 n.9 (E.D. Mich. 2015) ("Because there is no related action pending in a state court, the fourth factor is not relevant.").

> v.   *Factor 5: Whether There is an Alternative Remedy Which is Better or More Effective*

"The final factor to consider is the availability of alternative remedies." *Scottsdale Ins. Co.*, 513 F.3d at 561. "A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Id.* at 562 (quoting *Grand Trunk*, 746 F.2d at 326). "[W]here the issue is relatively straightforward and state law provides clear guidance, a federal court is not 'a clearly inferior forum to resolve the issue.'" *W. World Ins. Co.*, 2013 WL 5372769, at *5 (quoting *Scottsdale Ins. Co.*, 513 F.3d at 562). The Sixth Circuit instructs that "rather than applying a general rule, [the] inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Scottsdale Ins. Co.*, 513 F.3d at 562; *W. World Ins. Co.*, 773 F.3d at 761.

Plaintiff argues that the fifth factor "favors the exercise of jurisdiction" because "there is no alternative remedy that would be more effective than a decision from this Court on the questions and issues identified in Count One." (ECF No. 59, PageID.1231.) In Plaintiff's view,

> [t]here is no alternative, more effective forum available to
> determine whether the mortgage at issue was improperly
> discharged in July 2014. The state court where this case
> initially was filed is certainly capable of deciding the issues at
> hand, but there is no reason to believe it would be more
> efficient or effective at doing so.

(*Id.*) The United States argues that the issue of declaratory relief "is better determined, if at all, in . . . a subsequent mortgage-foreclosure action because that court will be able to resolve all of the legal issues, of which the validity of the mortgage is but one element of [Plaintiff's] claims or defenses."[12] (ECF No. 57, PageID.1205–1206.)

---

[12] The United States supports its argument by citing to *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 816 (6th Cir. 2004). (ECF No. 57, PageID.1206.) In *Bituminous Cas. Corp.*, the Sixth Circuit determined that the fifth *Grand Trunk* factor "weigh[ed] against exercising jurisdiction." 373 F.3d at 817. The court's findings included that the plaintiff "could have presented its [declaratory judgment] case to the same court that will decide the underlying tort action," that the state court was "in a superior position to resolve the case" because it solely involved issues of state law, that "a superior alternative remedy exist[ed] in the form of an indemnity action filed at the conclusion of the underlying state action," and that "[t]here is no reason to suppose that the alternate remedies available in state court would not adequately protect [the plaintiff's] interests." *Id.* at 816. In that Sixth Circuit case, "two state actions, involving the same factual issue that [was] presented in th[e federal] declaratory judgment action, were pending when th[e] action was filed." *Id.* at 815. In its supplemental brief, the United States does not cite to a case analyzing the fifth *Grand Trunk* factor in which no state-court case is pending—as is the situation here.

The parties do not identify a superior alternative remedy. Nor is the Court aware of one. Because this case involves Michigan law, a state court is likely in a good position to resolve it. *See Kondaur Cap. Corp. v. Smith*, No. 1:18-cv-00013-SKL, 2019 WL 13249812, at \*7 (E.D. Tenn. Mar. 1, 2019) (stating that "claims concerning the validity and priority of liens are creatures of state law that are more appropriately brought in state court"). Indeed, that is where the complaint in this case was first filed before the United States removed the case to federal court. But state court is unlikely to be an alternative forum. There is no pending state-court action in which Plaintiff can obtain relief. And any future case concerning the property that is brought by Plaintiff and not barred by *res judicata* will presumably involve the United States, which appears to have a continued interest in the property. The United States will likely remove the case to federal court. Even if state court were an option, it is not clear that state court would provide a better or more effective remedy. Federal court is "not 'a clearly inferior forum,'" given that the issue before the Court is "relatively straightforward." *W. World Ins. Co.*, 2013 WL 5372769, at \*5 (quoting *Scottsdale Ins. Co.*, 513 F.3d at 562). Thus, the fifth factor weighs in favor of exercising jurisdiction.

> vi.   *Balancing the Factors*

In this case, the first, second, and fifth *Grand Trunk* factors favor the exercise of jurisdiction. The third factor is neutral. The fourth factor supports the exercise of jurisdiction or is not relevant to the analysis. In weighing these factors and considering the facts of this case, the Court concludes that it is appropriate to exercise jurisdiction. *See United Specialty Ins. Co.*, 936 F.3d at 402 ("The district court did not abuse its discretion in exercising jurisdiction under the Declaratory Judgment Act" because "*Grand Trunk* factors one and two support jurisdiction; factor three is neutral; factor four is neutral; and factor five arguably disfavors the exercise of jurisdiction."); *Boyd*, 2023 WL 4903173, at *8 (concluding that "the balance of factors supports the district court's decision to exercise jurisdiction over [a] case" in which "[t]he first, second, fourth, and fifth factors all weigh in favor of jurisdiction, while the third factor is neutral"). Said differently, "efficiency considerations favor the exercise of federal jurisdiction, and fairness and federalism concerns do not counsel against it." *United Specialty Ins. Co.*, 936 F.3d at 397 (citing *W. World Ins. Co.*, 773 F.3d at 759).

## C. The Merits of Plaintiff's Declaratory-Judgment Count (Count 1)

Because the *Grand Trunk* factors favor the exercise of jurisdiction under the Declaratory Judgment Act, the Court proceeds to address the merits of the declaratory-judgment count. *See Kattula*, 2019 WL 7882540, at *2 (remanding "so that the district court can assess its jurisdiction over Wilmington's declaratory-judgment count under the framework established in *Grand Trunk* and, if it decides to exercise its jurisdiction, to address the merits of that count").

In its supplemental brief, Plaintiff argues that "[i]f the Court concludes that it is appropriate to exercise jurisdiction over Count One then it should, on the existing record and in light of the direction from the Court of Appeals, issue a judgment partially granting the relief requested": an order declaring that "the Discharge of Mortgage dated July 1, 2014, and recorded July 2, 2014, . . . be extinguished and removed from the chain of title." (ECF No. 59, PageID.1231–1232.) Plaintiff states that (1) the Court found that the discharge "was erroneous" and (2) declaratory relief regarding the discharge "was the very first item listed in the request for relief identified under [C]ount [O]ne." (*Id.* (internal citations omitted).) According to Plaintiff,

38

[t]he Court should, therefore, enter a judgment granting partial relief to [Plaintiff]. Under the Declaratory Relief Act [sic], the Court should "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

As the Court of Appeals correctly stated, "a declaration that the debt continues to exist (as the court found as a factual matter) may clarify the legal relations between the parties even if Wilmington failed to present adequate proof about the amount of the debt or the existence of a default—the additional elements required for its second foreclosure count." *See* ECF No. 53 at PageID.1195. Even if Plaintiff was unable to persuade the Court as to the amount of the debt, which the Court made clear it was not, a judgment granting partial relief under Count One would at least partially resolve the controversy between the parties "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

(*Id.* at PageID.1232.)

Plaintiff does not provide a legal basis for the Court to grant it the portion of the declaratory relief in Count 1 it now seeks. Plaintiff argues—without citing to cases or other legal authority[13]—that it is entitled to a declaration because of the Court's prior finding regarding the discharge and because a declaration as to the discharge is listed in

---

[13] Plaintiff's subsequent references to the Declaratory Judgment Act and the Sixth Circuit's order are addressed below.

Count 1. (*Id.* at PageID.1231–1232.) But Plaintiff does not demonstrate that these reasons compel the issuance of a declaratory judgment by this Court. The Court was aware of Plaintiff's stated reasons when it issued its previous decisions in this case. Plaintiff makes no effort to explain to the Court why these facts now require a different outcome. With respect to the language Plaintiff quotes from the Sixth Circuit's order, that language appears to refer to the *Grand Trunk* framework and the question of whether to exercise jurisdiction under the Declaratory Judgment Act. The Court is not persuaded by Plaintiff that the language from the Sixth Circuit's order requires the Court to decide Count 1 in Plaintiff's favor based on the merits of that count.[14]

---

[14] The Court notes that the Sixth Circuit reached no conclusion as to the propriety of a declaration or as to the merits of Count 1. Instead, the Sixth Circuit remanded the case for the Court to apply the *Grand Trunk* factors to assess the appropriateness of a declaration. The Sixth Circuit stated:

> [A] declaration that the debt continues to exist (as the court found as a factual matter) *may* clarify the legal relations between the parties even if Wilmington failed to present adequate proof about the amount of the debt or the existence of a default—the additional elements required for its second foreclosure count. *We do not decide now whether such a declaration would be proper.* Rather, the district court is better situated to decide in the first instance whether such a declaration would be appropriate under the *Grand Trunk* factors.

To the extent Plaintiff references the Declaratory Judgment Act in its filing as a basis for the requested relief, Plaintiff does not establish that relief is warranted solely under that statute. The Declaratory Judgment Act "'does not create an independent cause of action' that can be invoked absent some showing of an articulated legal wrong." *McClanahan v. State Farm Life Ins. Co.*, 660 F. Supp. 3d 728, 751 (W.D. Tenn. 2023) (quoting *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)), *reconsideration denied*, No. 1:22-cv-01031-STA-jay, 2023 WL 3587556 (W.D. Tenn. May 22, 2023). Citing Sixth Circuit and Supreme Court precedent, a different court in this circuit has stated that

> [b]y its very nature, "a declaratory judgment action is a procedural device used to vindicate substantive rights" but is not itself a substantive claim for relief. *Int'l Ass'n of Machinists & Aerospace Workers v. T.V.A.*, 108 F.3d 658, 668 (6th Cir. 1997); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199, 134 S. Ct. 843, 187 L.Ed.2d 703 (2014) (holding that "the operation of the Declaratory Judgment Act" is "procedural" only and leaves "substantive rights unchanged").

---

*Wilmington Sav. Fund Soc'y, FSB as Tr. of Residential Credit Opportunities Tr. V v. Kattula*, No. 19-1138, 2019 WL 7882540, at *2 (6th Cir. Nov. 6, 2019) (emphasis added). In the last sentence of its order, the Sixth Circuit also directed the Court to address the merits of Count 1 if the Court "decides to exercise its jurisdiction" following a *Grand Trunk* analysis. *Id.*

*Id.* at 750–51; *see Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937) (stating that "the operation of the Declaratory Judgment Act is procedural only" and that it "provid[es] remedies and defin[es] procedure in relation to cases and controversies in the constitutional sense"); *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023) ("Because [the plaintiff's] substantive § 1983 claim failed, her request for declaratory relief to resolve her substantive rights also failed." (citing *Medtronic, Inc.*, 571 U.S. at 192; *Davis*, 499 F.3d at 594)); 10B Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2754 (4th ed. 2024) (The Declaratory Judgment Act is "procedural only and merely grant[s] authority to the courts to use the remedy in cases over which they otherwise have jurisdiction."). Here, Plaintiff does not identify a legal basis for granting it the partial declaratory relief it seeks—aside from the Declaratory Judgment Act, whose operation is procedural. Moreover, Plaintiff does not articulate a legal wrong or a substantive claim that must be vindicated by the Court with a declaratory judgment. Plaintiff does not provide a reason for the Court to modify its previous rulings and to issue the requested declaration. Accordingly, the Court declines to do so.

## III. Conclusion

For the reasons stated above, the Court concludes that it has jurisdiction over Plaintiff's declaratory-judgment count (Count 1). The United States has waived sovereign immunity for that count. And under the *Grand Trunk* factors, the Court finds it appropriate to exercise the discretionary jurisdiction conferred by the Declaratory Judgment Act. Yet Plaintiff does not show that it is entitled to relief based on the merits of the declaratory-judgment count.

IT IS SO ORDERED.

Dated: June 25, 2024                    s/Judith E. Levy
   Ann Arbor, Michigan             JUDITH E. LEVY
                                   United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 25, 2024.

                                   s/Tammy Hallwood
                                   TAMMY HALLWOOD
                                   Case Manager